### Mills vs. Van Voorhis.

Where, upon a sale of land, a mortgage is given by the purchaser to secure the purchase money or a part thereof, the mortgagor and his grantees have each of them such a seisin of the equity of redemption in the land that their wives would be entitled to dower in that portion conveyed to their respective husbands subject to the payment of the mortgage.

The wives of such grantees can therefore, in case they survive their husbands, come in and redeem the mortgage, and so obtain dower.

Such an interest in the equity of redemption, and consequent right to redeem, cannot be barred or divested by a foreclosure or sale in a suit to which the wife is not a party; whether the right be, at the time, actual or inchoate. S. B. Strong, J., dissented.

The wives of the grantees of the mortgagor are therefore necessary parties to a suit for the foreclosure of the mortgage.

When the title to land fails, especially where the vendor honestly supposed he had title when he contracted to sell the land, the remedy of the vendee is a proper action for damages.

Where the state of the title is fully known to both parties, at the time of contracting for the sale, and the vendor offers the purchaser all the title he has, he does all in his power to perform his agreement. And if the purchaser declines accepting that title, he cannot bring a suit in equity to compel the vendor to give a complete and perfect title.

The cases of *Jackson* v, *De Witt*, (6 *Cowen*, 316,) and *Cunningham* v. *Knight*, (1 *Barb. S. C. Rep.* 399,) so far as they deny the right of a widow to redeem her dower from a mortgage given for the purchase money, either entirely outstanding or foreclosed in a suit to which she was not a party, overruled.

APPEAL by the plaintiff from a judgment entered upon the report of a referee. The action was brought for the specific performance of a contract for the sale of real estate to the plaintiff, by the defendant. This contract was dated September 3, 1851. The defendant had previously, viz. on the 20th of August, 1835, sold a portion of the land to H. Learned, at the same time taking back from him a mortgage to secure the payment of a part of the purchase money. Learned afterwards sold several parcels of the land, to different individuals. A bill in chancery was subsequently filed to foreclose the mortgage given by Learned. A decree of foreclosure was obtained, in July, 1840, and the mortgaged premises were sold by a master. The defendant bid off the premises at the sale, and received a deed, dated July 17, 1840. Some of the grantees

of Learned had wives, at the time of the conveyance from Learned to them, who were not made parties to the foreclosure suit, and who are still living. The principal objection made by the plaintiff to the defendant's title was that these married women had an interest in the land, and that, not having been made parties to the foreclosure suit, they were not foreclosed.

The referee decided and adjudged that the plaintiff was not entitled to a decree for a specific performance of the agreement; but that he ought to recover from the defendant the sum of $597.41, being the amount paid by him to the defendant on the 3d day of September, 1851, on account of purchase money for the farm, with interest, and also his costs. And he further decided and adjudged that upon the payment of that amount and costs, the agreement should be delivered up to be canceled of record, &c.

*Ingraham & Underwood*, for the appellant. I. The title of the respondent to a part of the premises in question is imperfect. (1.) The wives of Tripp, Lloyd and Marston, and others, who purchased of Learned, were necessary parties in the foreclosure suit under which he purchased. (*Denton* v. *Nanny*, 8 *Barb.* 618. *Swaine* v. *Perine*, 5 *John. Ch.* 482. 10 *Paige*, 49, *opinion of Ruggles, V. C.*) (2.) Charles Coates, who held a mortgage on a part of the premises, made by Stephen B. Barker, and who is named in the bill of complaint as a defendant, in his own right, and also as survivor of one Butler, is not named in the decree except as such survivor, and he is not foreclosed by the decree as to his individual interest as mortgagee.

II. The respondent holds the mortgage so imperfectly foreclosed, and should be required to cure these defects and perfect the title; or if not, he should, after the delivery of his deed to the appellant, and taking the appellant's mortgage, be restrained from collecting the balance of the purchase money, and from assigning the mortgage until he shall perfect the title.

III. The conclusions of the referee as to the facts as well as to the law, are erroneous in the several respects and particulars mentioned in the appellant's exceptions to his report.

Mills *v.* Van Voorhis.

IV. The referee's conclusions of fact and law upon the testimony should have been as contended for by the appellant, and stated in his exceptions to said referee's report.

V. Time is not of the essence of the contract in question, so that non-performance on the 1st Nov. 1851, should bar this action ; especially as the acts and sayings of both parties on and since that day show conclusively that they did not so regard it. (*Edgerton* v. *Peckham*, 11 *Paige*, 352. *Stevenson* v. *Maxwell*, 2 *Comst.* 408.)

VI. The parties having agreed on the 1st Nov. 1851, to suspend indefinitely the time for consummating their contract, the tender by the appellant of the balance of the purchase money and his bond and mortgage, at the house of Covert, Nov. 14th, 1851, entitled him to a deed for the premises, and a perfect title thereto.

VII. If the respondent does not perfect his title, he should be compelled to convey the property, and deduct from the purchase money a reasonable compensation for the defects in his title ; (*King* v. *Bardeau*, 6 *John. Ch.* 38 ; *Winne* v. *Reynolds*, 6 *Paige*, 407 ;) or convey such part of the land as he has a perfect title to ; and in case he does not make compensation for the defects of title to the residue, and convey that also, then as to such residue, there should be a reference to ascertain the appellant's damages, and a judgment that the respondent pay the same. (*Woodcock* v. *Bennet*, 1 *Cowen*, 711. *Morss* v. *Elmendorf*, 11 *Paige*, 277. *Voorhees* v. *De Meyer*, 2 *Barb. S. C. R.* 37.)

VIII. The objections raised by the appellant to the respondent's title were made not capriciously, or to avoid the contract, but in order to have the defects cured, so that he might have what the respondent had contracted to give, a perfect title. There was good ground for raising these objections, however they may be decided. There is no pretense that the respondent has lost any thing by the delay, and he should be decreed to perform his contract, unless this court shall consider it a sufficient excuse to allow him to repudiate it because the land has risen in value, when there is nothing in this case which would have prevented

him from enforcing it against the appellant if the land had de-
preciated to half the contract price.

*N. B. Morse*, for the respondent.    I.  The title of the defend-
ant was perfect.    The deed from the defendant to Learned, and
Learned's mortgage back for the consideration money of the
deed, were, together, but one act, and formed but one contract,
by which Learned took a conditional fee in the land.  (*Jackson*
v. *De Witt*, 6 *Cowen*, 316.   *Stow* v. *Tifft*, 15 *John.* 458.)   If
there had been no mortgage back, from Learned, there would
not, at law, have been a condition to the fee granted to Learned,
but there would have been a condition in equity, called an
equitable mortgage, which a court of equity would enforce.
The grantees of Learned took their estates upon the same con-
dition that Learned's was held upon.  Their seisin was upon
condition.  The wife's right of dower is of the seisin of her
husband.  The seisin of the husband was of an estate upon
condition, which has been forfeited to the lord, who has re-
entered and is now seised in his first estate.  The payment or
tender of the money at the day agreed upon in the mortgage—
called the law day—would have cleared the estate of the condi-
tion, and the estate would have become absolute at law; but as
the money was not paid or tendered, the condition became for-
feited, and the title of the mortgagee became absolute at law.
Courts of equity at an early day interposed to soften the rigors
of the common law, and extended the law day to an indefinite
period, and established an equitable estate in the mortgagor,
called his equity of redemption, which existed from the day
the mortgagor had a right to redeem until that right was cut
off by a foreclosure.  It is immaterial to the questions raised
in this action to consider whether the law day has become ob-
literated and the equity day adopted at law, because the rule in
equity does not change the nature of the estate—but only im-
poses a new requisite to the forfeiture of the condition; and if
this requisite is adopted at law, it does not affect the case now
before the court, because the effect of the foreclosure is the
same as the original forfeiture by non-payment, and non-tender

at the law day. Equity always follows the law in its relations to estates in land, and the forfeiture of the condition in equity puts the estate in the same plight as the forfeiture of the condition at law puts it. Where, as in this case, the grantor conveys, and at the same time, as part of the same contract, the grantee gives back a mortgage for purchase money, the conveyance is upon condition, and the condition being forfeited whether at the law or the equity day, the grantor may enter, and " shall be seised in his first estate, which he had at the time of the estate made upon condition." I use the word grantor here as a general term, including his representatives and assigns. The grantor in the present case having been the purchaser at the mortgage sale, it is sufficient to speak of him alone. The estate granted to Learned, being upon condition, and the purchasers from him having taken title with notice, took subject to the condition, and were seised of an estate upon condition; and a woman cannot claim dower in land of which her husband was seised upon condition during coverture, in case of the forfeiture of the condition, during the lifetime of the husband. If a man seised in fee of an estate marries, and afterwards the condition is broken, and the lord enters for the breach, he will avoid the wife's dower. (1 *Rolle's Abr.* 474.) The grantees of Learned were made parties to the foreclosure, and had their day in court to redeem, and prevent forfeiture of the condition upon which they held their title, and failed to do it. The condition which had already been forfeited at law became forfeited in equity, and Van Voorhis, by his purchase at the master's sale became " seised in his first estate which he had at the time of the estate made upon condition." (*Coke Lit.* 202 *a.*) To entitle a person to redeem a mortgage, such person must have an interest in the land. (*Grant* v. *Duane,* 9 *John.* 591. *See* pp. 611, 612, *per Thompson, J.*) The wife of Hanes Learned had no such interest, nor had the wives of the purchasers from him. (*Lawrence* v. *Miller,* 2 *Comst.* 254, *per Gardiner, J. Moore* v. *New York,* 4 *Seld.* 110.)

II. If the court should be of the opinion that the title of the defendant is not a perfect title in fee, still an action for specific

performance is an application addressed to the sound discretion of the court. (*Seymour* v. *Delancy,* 3 *Cowen,* 445, *by Savage, C. J., and Suydam, senator, pp.* 505, 525. *St. John* v. *Benedict,* 6 *John. Ch.* 111. 12 *Ves. jun,* 331. 1 *id.* 566.) And the present is not a proper case for the exercise of such discretion. (1.) The contract on the part of the defendant was to give a full covenant warranty deed. This was the act he was to perform. (2.) He undertook and warranted that the title in the land to be conveyed by the deed should be a perfect title in fee at the time set for the delivery of the deed. There is no pretense that the representation made by the defendant in this warranty was not made in entire good faith. If at the time the deed was to have been delivered the defendant had not the title, which he had thus warranted to have, and the plaintiff was ready on his part, the warranty was broken, and the plaintiff had his action upon it, and he consequently had his adequate remedy at law. (3.) It is perfectly clear, and is nowhere pretended not to be, that the defendant was ready, and repeatedly offered to deliver the full covenant warranty deed called for by the contract, and that the plaintiff at all times refused, and in the frame of his complaint refuses to accept such a deed upon the ground that the title of the defendant was, and is, not a perfect title. If the title of the defendant is defective in the respects urged, the defects are not such as the defendant can remedy. He has no power to compel these married women to release their claims upon this land, and a court of equity will not decree an impossibility, nor will a court of equity compel him to wake up dormant claimants to his freehold, if any claims they have. It would be a new exercise of power in the court to take charge of, and direct the litigation, nay to originate a litigation which must bring into it a host of married women, to have their rights cut off, for that would be the only object. It is a well settled principle of equity, not to compel the specific performance of a contract which will result in the "injuring a third person." (1 *Sugd. Vend.* 420.) If these married women have the rights supposed, and the court compel a foreclosure of these rights, will they not be injured to the amount of the value of those rights? But the court cannot

Mills *v.* Van Voorhis.

compel a foreclosure in these cases: it can only compel those who have interests in the land *to redeem* on pain of foreclosure. The very object of the proceedings to foreclose, is to give notice to the parties *to redeem*, which if they disregard, will be followed by foreclosure of their rights to redeem. If these wives come in, and offer to redeem, the court cannot refuse their offer. They may pay the amount due and become subrogated to the rights of the mortgagee, and so take the fee of the whole tract—should the court create this episode in the litigation between the present parties, and should some of these women come in and redeem, a knot of relative rights would be created between these claimants, growing out of the order of the conveyances—the value of a married woman's right of dower, her husband living, and in various other respects to untie which would afford some scope to judicial patience if not to its ingenuity. The court will hardly compel a litigation, and if it does not, it is impossible for the defendant specifically to perform this part of his contract. (4.) A court of equity will not, at the suit of the vendee, compel a specific performance where the title of the vendor is not perfect, and will order the agreement to be canceled when the purchaser refuses to take it. (*Sugd. on Vend.* 419. *King* v. *King*, 1 *My. & K.* 442.) To compel the giving of a full covenant warranty deed, upon the plaintiff's theory, would only lay the foundation for an immediate action at law, upon the covenant of seisin, which would be broken by the delivery of the deed. Upon the plaintiff's theory, the only deed he had a right to insist upon in the execution of this contract was one so framed as not to leave the seller liable to an action on account of a flaw in the title. (1 *Sug. on Vend.* 420.)

III. The referee stands in this case in the place of one of the justices of this court at special term, and having exercised his discretion upon the case made before him, the general term will not disturb his judgment unless it be apparent and clear that the discretion has been improperly exercised.

IV. The referee should not have retained the case for the purpose of ascertaining the damages sustained by the plaintiff; because, (1.) There was no question as to the entire good faith

of the defendant, in making the agreement and the amount if any thing which the plaintiff had a right to recover. It was the amount he had paid with interest. (*Peters* v. *McKeon*, 4 *Denio*, 546.) (2.) The decision of the referee on this point was wholly and to the utmost extent in favor of the plaintiff, and the defendant has not appealed. (3.) This action cannot be turned into an action on the case for deceit. There being no pretense in the complaint or by evidence, even that the defendant did not act in entire good faith.

V. The judgment of the referee ought to be affirmed, with costs to the defendant.

EMOTT, J.  One of the objections made by the plaintiff to the title of the defendant was, that the rights of dower of the wives of certain grantees of Learned, the original mortgagor of the premises contracted to be sold, had not been extinguished. This was a valid objection. Although the seisin of the grantor of the persons whose wives were omitted from the foreclosure under which title was made to Van Voorhis, was not such as to give his wife a right of dower against the mortgage which was given for purchase money ; and probably by the same rule the wife of his grantee could not claim dower against the mortgage, still in the surplus, after paying the mortgage, or in the equity of redemption, as against all persons but the mortgagee for purchase money, both the wife of the first mortgagor and the wives of his grantees would be admitted to dower. I am aware that it was decided by the late Justice Barculo, in *Cunningham* v. *Knight*, (1 *Barb. S. C. R.* 399,) that when a woman married a husband who was seised of lands subject to a mortgage previously given for the purchase money, no right of dower ever attached and no suit to have her dower by redeeming all or any proper share of such a mortgage, could be maintained by the widow after the death of her husband. The learned judge placed his opinion very much on the authority of *Jackson* v. *De Witt*, (6 *Cowen*, 316,) and on the doctrine of an instantaneous or transitory seisin in the husband, in cases where the deed and the mortgage for purchase money were simultaneous and part

Mills *v.* Van Voorhis.

of the same transaction, which was asserted by the judge who delivered the opinion of the court in that case. Both these cases indeed differ from the present, in that the mortgage in each of them was executed before the marriage; but I am unable to see how that fact can affect the question or weaken the application of the reasoning of the court. If the husband, upon a conveyance to him for a consideration which he at the time executes a mortgage to secure, in whole or in part, obtains no seisin which is dowable at all, and acquires no estate out of which his wife or widow can be endowed, for the want of any actual or legal seisin until the mortgage given for the purchase money is satisfied, then evidently the rule and the result must be the same, whether the mortgage be executed during coverture or before. But we are all agreed that the doctrine of these cases is erroneous. *Jackson* v. *De Witt* was indeed correctly decided. That was ejectment for dower, by the widow against the tenant of a mortgagee, for purchase money, to whom the husband had released his equity of redemption. Obviously all that was necessary to sustain the decision of the court against the plaintiff in that case, was to hold that the mortgage was still outstanding as to the widow; and since she could not of course have dower against and in preference to the mortgage, she could not bring an action at law against the mortgagee in possession, nor claim her dower without contributing justly to the redemption of the mortgage to which it was subject. The doctrine of an instantaneous seisin was laid down in reference to, and for the benefit and protection of, the mortgagee for the purchase money when the wife did not sign the mortgage. As to him and his mortgage the husband has no seisin of which his wife can be endowed. But as to all the world beside, in this as in every other case of a mortgage, the equity of redemption is the legal estate in the land, and the mortgage is simply a security for money. As long as this is so, and the mortgage is not regarded as a reconveyance of the title and estate, dower must attach to such an equity of redemption subject to the prior rights and equities of the mortgagee. The consideration of the mortgage and the nature of the transaction so far affect the security as to render it unnecessary that

the wife should join in such a mortgage, and give it without her assent the same effect against her that it would have if it were the joint act of husband and wife, and also a preference to anterior judgments. This is the rule as declared by statute in reference to lands purchased by a husband during coverture, and mortgaged by him for the purchase money. (1 *R. S.* 740, 749.) So far as the wife or creditors are concerned, the seisin of the husband is of the equity of redemption only, and the lien of the mortgagee attaches simultaneously with the conveyance of the title, and prevents either the right of dower or the lien of judgments from operating, except upon the interest which remains after satisfying the mortgage. But it does not follow that a husband who has given a mortgage for the purchase money has such a transitory seisin that his widow cannot be endowed at all of the equity of redemption, if that mortgage remains unsatisfied in whole or in part; or that she cannot be permitted to redeem her dower interest from the mortgage. The contrary was held after full consideration, and a very able examination of the authorities, by Vice Chancellor Ruggles in *Bell* v. *The Mayor of New York,* (10 *Paige,* 49,) and his decision was affirmed by Chancellor Walworth on appeal. That case decides that the rights of the widow in the equity of redemption of a mortgage given for purchase money were not cut off by a foreclosure and sale in a suit to which she was not a party, commenced during the life of the husband, but not brought to a decree until after his death. I am unable to see upon what principle a foreclosure without making the wife a party during the life of the husband, can be more effectual than if it took place after his death. The right of the wife to dower in her husband's lands attaches at once to all lands of which he is or becomes seised at any time after marriage, and cannot be divested without her agency and consent, and it is recognized and protected while it is inchoate as distinctly as after it has become actual and immediate.

That the seisin of the husband in such a case is one of which the wife may be endowed, subject to the payment of the mortgage or to keeping down her just proportion of it, is clearly

shown and expressly decided by the chancellor and the vice chancellor in the case to which I have just referred. The doctrine of that case has met, I apprehend, with the approval of the profession and the courts; and so far as *Jackson* v. *De Witt* or *Cunningham* v. *Knight* deny the right of a widow to redeem her dower from a purchase money mortgage, either entirely outstanding or foreclosed in a suit to which she was not a party, I think they must be considered as not the law.

It seems to me that these considerations are decisive of the present question. Whether the wives of the grantees of the original mortgagor were necessary parties to a foreclosure, in order to make a perfect title, cannot depend upon whether they had or could have a dower interest against, or paramount to, the mortgage, but whether they have any interest in the lands at all. The object of a suit in equity upon a mortgage is to foreclose all parties interested in the equity of redemption; that is, to cut them off from subsequently claiming and obtaining the enjoyment of their interests, whatever they may be, by redeeming the mortgage either *pro tanto* or entirely. It may be very true that by a sale in a suit against the mortgagor alone or from which any parties in any way interested in the lands are omitted, the existing title and estate of both the mortgagor and mortgagee may become vested in a purchaser, but the interests and estates in the equity of redemption of persons who are not parties do not pass, nor are they affected by such a sale.

As to the wives of the grantees of the mortgagor in this case, it is true the purchaser at the sale under the decree, stands in the place of the mortgagee but as mortgagee only. They have a right to invoke the rule, once a mortgage always a mortgage, until their rights have been foreclosed, and they may at any time after their inchoate estate has become entire and complete, assert their equity to redeem. The rights and equities acquired under the mortgage are indeed prior and paramount to these equities, but as long as any such equities exist the plaintiff was but a mortgagee in possession as to those in whom they are or may become vested, and he cannot convey a title which is perfect and indefeasible in equity as well as at law.

There is no analogy between the case of a woman who has at the time of the commencement of the suit a right of dower either actual or inchoate, and the case of a purchaser *pendente lite.* Whatever interests are acquired during the prosecution of the suit are subject to the rights of the plaintiff, and will be affected by the judgment in the cause, without naming their holders in the proceedings. But a doweress, or a wife having an inchoate right of dower when the suit was commenced and who is not made a party, is not bound to take notice of the proceedings. She is not called upon to redeem, nor does she lose her right to do so; nor is she bound to attend to her interests in a surplus arising at a sale of which she is not presumed to have had notice so as to protect herself. (1 *John. Ch. Rep.* 45. *Id.* 482. 3 *Paige,* 658.) That inchoate rights of dower are entitled to protection, and that one-third of the surplus proceeds of a sale after satisfying a mortgage paramount and prior to the wife's rights, should be secured to await the contingency of her survivorship in all cases where these rights have not been voluntarily released, was held by Justice Brown in *Denton* v. *Nanny,* (8 *Barb.* 618.) That case is in point upon the present question, except that there the mortgage was not for the purchase money but was executed by both husband and wife. The decision in that case, and the reasoning by which it is supported, were approved by the full bench of the 7th district, in *Vartie* v. *Underwood,* (18 *Barb.* 561, 564.)

Upon the whole, I think we are compelled to reach these results in this case : 1. The original mortgagor and his grantees had each of them such a seisin of the equity of redemption in these lands, that their wives would be entitled to dower in that portion conveyed to their respective husbands, subject to the payment of the mortgage made by Learned. 2. The wives of these owners of the lands could therefore in case they survived their husbands, come in and redeem the mortgage and so obtain dower. 3. Such an interest in the equity of redemption, and consequent right to redeem, cannot be barred or divested by a foreclosure or sale in a suit to which the wife is not a party, whether the right be at the time actual or inchoate. 4. The

Mills *v.* Van Voorhis.

wives of the grantees of Learned in this case were therefore necessary parties to the suit for the foreclosure of his mortgage, and the title of the vendor Van Voorhis was defective, because they had not been brought in.

But this was a defect which the vendor could not remove. He might bring a suit to foreclose them, but he could not prevent them from redeeming if they saw fit. When, therefore, he offered the purchaser all the title he had he did every thing which he was able to do legally, to perform his agreement. The plaintiff declined this title, and after a very considerable delay, which is certainly somewhat equivocal as to the intentions of the parties, he brings this suit to compel the performance of the contract according to its terms; that is, to compel the defendant to give him a title which he confessedly has not to give. There is no desire or willingness to receive the title which the vendor has or can make, either expressed in the complaint or to be found or inferred from the plaintiff's conduct. Such a suit as this a court of equity cannot entertain. When the title fails, and especially when it fails in a case where the vendor honorably supposed he had title when he made the agreement, the remedy of the vendee is a proper action for damages. It is true the vendee may offer to take the defective title with compensation for the defects, or a proper deduction from the purchase money; and if that is refused he may ask a specific performance to the extent of the vendor's ability, with such compensation or deduction. So if the defect be not known or ascertained until the vendor's title comes to be examined in a suit for specific performance, the vendee may then elect to take the title as it is, with proper compensation. But neither of these is this case. The state of the title was fully known to both parties and formed the ground of their original difference. This suit, however, is brought to compel the defendant to give a complete and perfect title, and there is no offer to take any thing less. That is something which is not in the power of the court to compel. Something which the defendant has not and cannot acquire, and therefore the referee might have dismissed the suit. His judgment

is as favorable as the plaintiff can ask, and should be affirmed with costs.

BROWN, P. J. concurred.

S. B. STRONG, J, The plaintiff demands, in this action, the specific performance of a contract for the sale of real estate to him, by the defendant, The defendant answers that he offered to perform the contract, according to its terms, but' that the plaintiff declined the offer and refused to perform it on his part. And the defendant contends that after such refusal he was absolved from his engagement. The plaintiff does not deny that the defendant tendered to him a conveyance, in terms conformable to the contract, but he alleges that there were defects in the defendant's title to a portion of the premises, which could be cured by certain suggested proceedings by the defendant, and that he offered to accept, at the time, a deed for those parts to which his objections were inapplicable, and for the residue when the title should be perfected, and to adjust the payment or security of the purchase money upon equitable terms ; to which offer the defendant refused to accede.

The objections raised by the plaintiff to the defendant's title were to the proceedings in a suit for the foreclosure of a mortgage to the defendant by one who had purchased from him, under which the defendant had purchased the premises. It did not appear from the papers on file, that subpœnas in that suit had been served upon all the defendants ; or that final judgment had been entered against some of the parties named, and the wives of some of the purchasers of the equity of redemption had not been named as defendants. It appears from the report of the referee that these objections were, at the time, founded in fact. Some of the papers to prove the service of subpœnas had been mislaid, but they were found upwards of two years after the negotiation between the parties had terminated, and that objection was then cured. The referee also states that the defendants named in the complaint in that suit, against whom no decree had been made, were judgment credit-

ors whose liens had been satisfied, or persons who had no interest in the mortgaged premises. That was not, therefore, any valid objection to the title, but it was a seeming one, and it does not appear that any satisfactory explanation was made to the plaintiff, at the time.

The remaining objection, that the wives of some of the subsequent purchasers of parts of the premises sold in the foreclosure suit, if it ever had any force, still exists. It involves the question whether a purchaser of land, who, at the time of the conveyance to him, executes a mortgage for the consideration money, or a part of it, has a dowable estate, as against the mortgagee or those claiming under him. No doubt the deed of conveyance and the mortgage. constitute but one transaction, and the whole must be taken together. But I cannot perceive how they constitute a conveyance of an estate upon condition. The grantor cannot re-enter, nor recover the land, for condition broken, nor can he avoid the liens of incumbrances, except upon a foreclosure. The mortgage to him is not a reconveyance of the title upon condition to be void upon the payment of the secured money, but it is considered by our laws as a mere security, with the advantages that it has a preference over antecedent judgments against the mortgagor, and that it is not subject to the right of dower of his wife, if he has one, as against the mortgagee and those claiming under him. Neither can I understand how the grantee, in such cases, has only an instantaneous seisin. That would be so if he immediately reconveyed the *title*. He would then have no longer seisin than if he had been used as a mere conduit in the transfer to some third person. A mortgage is considered, in England, as a conveyance of the title, and accordingly the mortgagee could maintain ejectment for the land. In this state, however, since the abolition of the right to maintain ejectment, it is deemed to be a mere security for the payment of money, and the mortgagor is considered the owner, until foreclosure. By a statute of this state, which went into operation in 1830, (1 *R. S.* 740, 1, § 5,) it is provided that where a husband shall purchase lands during coverture and shall at the same time mortgage his estate in

such lands to secure the payment of the purchase money, his widow shall not be entitled to dower out of such lands, as against the mortgagee or those claiming under him, although she shall not have united in such mortgage, but she shall be entitled to her dower as against all other persons. If this was an abridgment of the pre-existing right of dower, it was one which the legislature had the power to make; at least as to all subsequent conveyances. The effect of it was that the estate thus conveyed and mortgaged was not dowable as to the mortgagee and those claiming under him, although it was as to all others. The statutory provision was designed, as the revisers state in their notes, to enforce the rule laid down by the supreme court in *Stow* v. *Tifft*, (15 *John*. 458,) where it was decided that the widow of a grantee who gave a mortgage for the consideration money, when he took his deed, cannot claim her dower in the premises, and in *Jackson* v. *De Witt*, (6 *Cowen*, 316,) where there was a similar decision in a case in which dower had been admeasured to the widow, and she had recovered possession in a suit at law. If any one but the widow or those claiming under her, for instance a second mortgagee, should institute an action *in rem* for the land, doubtless the wife of the mortgagor, or in case of his death, his widow, should be made a party, because as to such subsequent claimant, the estate would be subject to dower. It is true that as to subsequent claimants the wife or widow has a priority, but that is a matter between them, in which the vendor mortgagee has no concern. If he should foreclose and there should be an overplus, she might claim her interest in it, and a reference as to its distribution. So might others, such as purchasers *pendente lite*, but that does not render it necessary to make them parties. I am aware that it has been decided (in *Bell* v. *The Mayor of New York*, 10 *Paige*, 49,) that the widow of a mortgagor for the purchase money who died before foreclosure, is entitled to dower, and can redeem, notwithstanding a sale in a foreclosure suit to which she was not a party. I had a long conversation with the learned vice chancellor who first decided that case, when it was pending before him, on the principal points involved in it, in which

he stated his reasons, and enforced them with great ability; but with all my deference for his opinion, and it was very great, I differed from him then, and still differ, although he was afterwards sustained by Chancellor Walworth, another very high authority. That case went to the court for the correction of errors, but it was eventually compromised. The vice chancellor, however, says, (*p.* 55,) " a foreclosure and sale by a bill in chancery against the husband, during his lifetime and while his wife's right of dower was inchoate, would have barred her claim at law. Whether it would have cut off her equity of redemption here, is doubtful." And the chancellor says, (*p.* 67,) " what would have been the effect of an actual foreclosure and sale of the equity of redemption during the lifetime of the husband under a decree of this court to which the wife was not a party, it is not necessary to decide here." The precise point between the parties in this case was not therefore. decided by either of those learned judges. But I can see no substantial difference as to the existence of a claim against the vendor mortgagee, or those claiming under him, whether it is in behalf of wife or widow. If the estate is at all subject to dower as to those having this higher equity, it seems to me that even an inchoate right cannot be defeated, except in a suit to which the claimant is a party. It seems to me that there cannot be a double interest in the wife of the grantee, as against the grantor and those claiming through him. If the title is thus qualified in the hands of the original grantee, it must remain so in those claiming under him, as he cannot grant any higher estate than his own. If I am right in this, then the objection that portions of the estate were subject to the inchoate right of dower of the wives of the present holders, is untenable. Still it could not be considered as an unreasonable one, as it is founded upon the opinions of two very able judges. It is true that if there was a mistake it was one of law, and therefore did not absolutely excuse the party making it; still the difficulty of the question involved might have some influence on the purely equitable question whether one who had been delayed in the

Mills *v.* Van Voorhis.

performance of his engagement, by it, should not be entitled to some relief.

It is apparent, from the evidence, that the plaintiff was anxious to consummate his bargain, if he could obtain an unexceptionable title. Some of the objections raised by him at the time were apparently well founded, and he had a right to have them removed before he took a conveyance. Two of them have since been explained away, and the other, although so far plausible as to indicate that it was made in good faith, is invalid. It seems to me that under such circumstances he is entitled to the performance of the contract, so far as that can be effectuated, unless something has intervened which would render such a consummation peculiarly injurious to the defendant. Nothing has been suggested, except that the property has risen in value, and that the defendant would be deprived of the advance. That furnishes no reason why he should not fulfill his engagement now, when it satisfactorily appears that he has the ability to do it.

The delay, however, has not been caused by the defendant. He was ready and willing to perform his contract at the time. He ought not to be subjected to any responsibility for the rents and profits of the property if they exceed the interest on the unpaid part of the purchase money. If they fall short of the interest he should receive the difference; and he may, at his election, have a reference to ascertain what he has received for such rents and profits, and to state a balance. The plaintiff may have a decree for a specific performance of the contract, so far as it can now be performed, on the payment of such balance, if any, and the defendant's costs. And the judgment on the report of the referee should be reversed.

The decree should be entered under the direction of one of the justices of this court.

Judgment affirmed.

[KINGS GENERAL TERM, October 14, 1856. *Brown, S. B. Strong* and *Emott,* Justices.]